**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS AT WICHITA**

UNION PACIFIC RAILROAD COMPANY,     )
                                     )
     Plaintiff,                   )
                                     )
     and                      )
                                     )
CONTINENTAL WESTERN          )
INSURANCE COMPANY,           )    Case No. 07-1279-MLB-DWB
                                     )
     Intervenor-Plaintiff,     )
                                     )
     vs.                      )
                                     )
GREDE FOUNDRIES, INC.,       )
                                     )
     Defendant.               )

## MEMORANDUM IN OPPOSITION TO GREDE FOUNDRIES, INC.'S MOTION TO COMPEL DISCOVERY

Plaintiff Union Pacific Railroad Company ("Union Pacific" and/or "UP") files this Memorandum in Opposition to Defendant Grede Foundries, Inc.'s ("Grede") Motion to Compel Discovery:

### A.    INTRODUCTION AND NATURE OF THE CASE

This case arises out of a train derailment in Wichita, Kansas on July 11, 2006. As part of the derailment, a Union Pacific train collided with certain buildings that were adjacent to its track. One of those buildings was owned by Defendant Grede Foundries, Inc. ("Grede"). Another of those buildings was owned by Lorac Company, Inc., who was insured by Continental Western Insurance Company ("Continental Western").

The present discovery issues are largely attributable to Grede's failure to seek discovery through proper requests that comply with the Federal Rules of Civil Procedure. Grede served discovery requests that are facially overbroad and burdensome and of the sort this Court has

repeatedly condemned and refused to enforce.  Union Pacific would have been within its rights

to stand on its objections to Grede's requests, but in the interest of cooperation agreed to produce

a limited number of readily identifiable documents of the type Union Pacific typically produces

in litigation in response to properly worded requests.  In certain cases, Grede is moving to

compel the production of documents that Grede has never specifically requested through a

proper Rule 34 request for production of documents.  Grede has also ignored or downplayed the

extent of the information UP has provided, and has suggested incorrectly that UP's discovery

responses and document productions have been deficient.  As described below, UP has produced

a host of documents concerning the condition of the railroad tracks.  Grede's dissatisfaction with

the production does not establish that UP has failed to perform its obligations, but rather

highlights the problems that arise when a party serves discovery that is not properly worded and

reasonable in scope.

## B.   STATEMENT OF FACTS

1.       Union Pacific filed its Petition in the District Court of Sedgwick County, Kansas

on August 15, 2007.  Grede removed this case to this Court on September 17, 2007.[1]

2.       Grede did not serve its initial written discovery requests upon Union Pacific until

December 13, 2007.[2]

3.       Union Pacific's Counsel, Craig M. Leff, had a conversation with Heather

Gatewood, co-Counsel for Grede in December 2007, during which Union Pacific previewed its

objections to Grede's subject discovery requests.[3]  Union Pacific's counsel explained that most

---

[1] See Petition; Notive of Removal.
[2] Plaintiff's Brief in Support of Grede's Motion to Compel Discovery, Doc # 60, pg 1; See Id. at Defendant Grede's First Set of Interrogatories and Requests for Production of Documents to Plaintiff, served December 13, 2007, attached to Mathison Affidavit as "Ex. B."
[3] Affidavit of Craig M. Leff, attached as Ex. "1."

of the document requests were so overly broad and vague that they prevented any meaningful response by Union Pacific.

4.      UP timely responded to Grede's Request for Production of Documents on January 11, 2008, but received a one-month extension on its Interrogatory answers.[4]

5.      Grede's initial Request for Production contained five individual requests.  Union Pacific objected to Requests 1, 2, 4 and 5 on the grounds that they were facially overbroad and/or not properly limited in time.[5]

6.      Although Union Pacific's counsel had announced his willingness to reach an amicable resolution to its objections, counsel for Grede waited nearly two months after Union Pacific served its objections before sendng a "Golden Rule" letter to Union Pacific on March 4, 2008 addressing Union Pacific's objections to Grede's Requests for Production.[6]

7.      Grede also provided Union Pacific with a "Golden Rule" letter regarding Grede's subject Interrogatories on March 11, 2008.[7]

8.      Although Grede's counsel purported to restrict to scope of certain of the subject Requests by letter, these restrictions did not eliminate the overarching objections, namely that these Requests were excessive in time and scope and failed to adequately identify which documents were requested.[8]

---

[4] Letter from Counsel for Union Pacific, Craig M. Leff to Counsel for Grede, Heather Gatewood, dated January 10, 2008, attached as Ex. "2."
[5] See Doc # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. E."
[6] Letter from Counsel for Grede, Tara M. Mathison, to Counsel for Union Pacific, Craig M. Leff, dated March 4, 2008, attached as Ex. "3."
[7] Letter from Counsel for Grede, Tara M. Mathison, to Counsel for Union Pacific, Craig M. Leff, dated March 4, 2008, attached as Ex. "3.";Letter from Counsel for Grede, Tara M. Mathison, to Counsel for Union Pacific, Craig M. Leff, dated March 11, 2008, attached as Ex. "4."
[8] Id.; Affidavit of Craig M. Leff, attached as Ex. "1."

9.      Nonetheless, in a good faith effort to provide some responsive documents, counsel for UP agreed to produce a limited set of records of the sort UP typically produces in other railroad litigation in response to specific requests for their production.[9]

10.     Contrary to Grede's position, Union Pacific has, in fact, produced a wealth of documents, including some Grede claims have not been produced, and others Grede has never specifically requested in a proper document request.  Among other things, UP has produced:

a.      EC Car Exception Reports reflecting track defects detected by a geometry car over the subject section of track between 1999 and 2008.   These reports covered a section of track two miles north and two miles south of the site of the derailment.  These documents are maintained electronically by Union Pacific and were produced from data UP maintains in the ordinary course of Union Pacific's business.[10]

b.      DC Car Exception Reports reflecting any defects detected by a rail detector car over the subject section of track between 1999 and 2008. These reports covered a section of track two miles north and two miles south of the site of the derailment.  These documents are maintained electronically by Union Pacific and were produced from data UP maintains in the ordinary course of Union Pacific's business.[11]

c.      Records of the FRA-mandated[12] track inspections performed by Union Pacific's track inspector for the time period 2001-2008.  These documents are maintained electronically by Union Pacific and were produced from data UP maintains in the ordinary course of Union Pacific's business.  These reports covered a section of track two miles north and

---

[9] Affidavit of Craig M. Leff, attached as Ex. "1."
[10] Affidavit of Craig M. Leff, attached as Ex. "1."
[11] Affidavit of Craig M. Leff, attached as Ex. "1."
[12] FRA refers to the Federal Railroad Administration, the administrative agency that regulates and oversees railroad operations.

two miles south of the site of the derailment.  UP produced these reports from the electronic data

that UP maintains in the ordinary course of its business.[13]

        d.     Geometry car videos.  UP produced videotaped footage taken by the

camera affixed to the geometry car that traversed the track in 2005 and 2006.[14]

        e.     Notes and photographs of the railroad tracks made by signalman Terry

Giltner.[15]

    11.    A full list of all the documents Union Pacific has produced to date is attached to

the Affidavit of Craig M. Leff as "Exhibit A."[16]

    12.    Several of the documents or categories of documents that Grede now claims that

Union Pacific is obligated to produce have never been formally requested in writing, including:

        a.     "Form A Track Bulletins."  The subject of these bulletins first arose

during the depositions of UP employees in Wichita, Kansas on April 22 and 23, 2008.  Despite

learning of the existence of these documents, Grede never served any request for their

production.  Nevertheless, UP's counsel indicated a willingness to produce such documents

voluntarily, and on May 14, 2008, UP produced to Grede's counsel a 26-page document

detailing all slow orders, including "Form A" and "Form B" slow orders, issued for the subject

track between January 1, 2000 and July 11, 2006—the date of the derailment.  The slow order

summary reflects for each slow order, the date, the milepost limits of the slow order, the

timetable speed, the slow ordered speed, and the reason why the slow order was issued.  These

documents were Bates numbered UP0662-UP0687.  Notably, this production came two days

---

[13] Affidavit of Craig M. Leff, attached as Ex. "1."
[14] Affidavit of Craig M. Leff, attached as Ex. "1."
[15] Affidavit of Craig M. Leff, attached as Ex. "1."
[16] "Exhibit A" to Affidavit of Craig M. Leff, attached as Ex. "5."

before Grede filed its Motion to Compel.[17]   While UP did not produce each and every individual slow order listed in the 26-page summary, it never agreed to do so.  Moreover, the burden associated with pulling each individual slow order is significant, and would require a person to manually input and retrieve each record individually.  The process is labor intensive and time consuming, and the burden associated with the retrieval of these documents far outweighs any additional probative value the actual slow orders would have compared to the slow order summary, particularly for slow orders that are remote in time and location from the date of the July 11, 2006 derailment.

b.      "E-mails related to track defects, conditions, repairs and maintenance." Grede's First Request for Production of Documents never specifically requested such documents.[18]

c.      "Event data recorder from derailed train." Grede never requested this information in its First Request for Production of Documents.  The locomotive's event recorder is an electronic device that monitors and records various locomotive functions, including speed, direction, throttle, braking, time, and distance.  It does not record conversations between the train's crew.  While UP would not object to producing such documents in this case, assuming the requests was properly limited, Grede has not served a proper requests for their production.[19]

d.      "Work orders" and "trouble tickets." Grede is referring to documents that UP signalman Matt Kreidler referenced during his deposition.  These documents do not relate directly to the condition of the track, but are generated by UP's signal department in connection with reports of grade crossing warning system problems and malfunctions.  Notably, although

---

[17] Affidavit of Craig M. Leff, attached as Ex. "1."
[18] Affidavit of Craig M. Leff, attached as Ex. "1."
[19] Affidavit of Craig M. Leff, attached as Ex. "1."

the subject of trouble tickets and work orders was addressed during Mr. Kreidler's deposition,

Grede never formally requested these documents at any point after Mr. Kreidler's deposition.[20]

       e.     "Notes of inspections."  While it is true that no handwritten notes of track

inspections have been provided, track inspector Wade Fisher testified during his deposition that

he maintained his hand-written inspection notes only long enough for him to prepare electronic

inspection reports and that he routinely discarded these notes after he was done with his

electronic reports.  Further, these "notes" have never been formally requested in writing.[21]

13.     At the conclusion of the depositions of the UP witnesses in Wichita, Kansas on

April 22 and 23, 2008 counsel for Grede indicated that she intended to send a letter identifying

all of the documents that she contended Grede had requested but that Union Pacific had failed to

produce.  Since that time, UP has not received any letter from Grede's counsel, Ms. Mathison,

outlining the additional documents that she believes Grede requested but UP has not produced.[22]

14.     Beyond its five initial Requests for Production of Documents, served in December

2007, Grede has not served any additional document requests.

## C.  ARGUMENT AND AUTHORITIES

### 1.  Certain of the Discovery that Grede Purports to Make the Subject of Its Motion to Compel was "Issued or Served" in Violation of Rule 34

Grede's document requests are facially overbroad.  It is this fact, more than any other,

that lies at the heart of this dispute. Many of the discovery requests addressed in Grede's Motion

to Compel are poorly worded, facially overly broad, and fail to contain the "reasonable

particularity" required by Rule 34.  Fed.R.Civ.P. 34; See MGP Ingredients, Inc., v. Mars, Inc.,

---

[20] Affidavit of Craig M. Leff, attached as Ex. "1."
[21] Affidavit of Craig M. Leff, attached as Ex. "1.,"; See Deposition of Wade Fisher, pgs 22-23, attached as "Ex. B," to Affidavit of Craig M. Leff.
[22] Affidavit of Craig M. Leff, attached as Ex. "1."

Case No. 06-2318, 2007 WL 3010343, at *3 (D.Kan. Oct. 15, 2007); Cardenas v. Dorel Juvenile

Group, Inc., 232 F.R.D. 377 (D.Kan. 2005).

The Federal Rules of Civil Procedure exist for a reason.  A formal written request

specifies the documents requested and gives the responding party has an opportunity to make any

necessary objections and to determine whether responsive documents exist.  Rule 34 requires the

propounding party to describe each document or category of documents with "reasonable

particularity." Fed.R.Civ.P. 34(b).  The use of all-encompassing language violates Rule 34.

As this Court has held, requests should be reasonably specific, allowing the respondent to

readily identify what is wanted.  Western Resources, Inc. v. Union Pacific R.R. Co., Case No.

00-2043, 2001 WL 1718368, at *3 (D.Kan. Dec. 5, 2001)(citing Audiotext Communications v.

U.S. Telecom, Inc., Case No. 94-2395, 1995 WL 18759, at *1 (D.Kan. Jan. 17, 1995) and

Cotracom Commodity Trading Co. v. Seaboard Corp., 189 F.R.D. 655, 666 (D.Kan.1999)).

Courts may find requests overly broad when they are "couched in such broad language as to

make arduous the task of deciding which of numerous documents may conceivably fall within

[their] scope." Id.[23]  Using a broad term such as "relate to" provides no basis upon which a party

can reasonably determine what documents may or may not be responsive. Id.

As this Court held in Audiotext Communications v. U.S. Telecom, Inc., Case No. 94-

2395, 1995 WL 18759 (D.Kan. Jan. 17, 1995):

> Requests which are worded too broadly or are too all inclusive of a general topic
> function like a giant broom, sweeping everything in their path, useful or not. They
> require the respondent either to guess or move through mental gymnastics which
> are unreasonably time-consuming and burdensome to determine which of many
> pieces of paper may conceivably contain some detail, either obvious or hidden,

---

[23] See also Aikens v. Deluxe Fin. Servs., 217 F.R.D. 533, 537-38 (D.Kan. 2003) (noting that discovery requests can be
facially unduly burdensome and overly broad if the request's wording "requires the answering party to 'engage in mental
gymnastics to determine what information may or may not be remotely responsive'"); Bailey v. SBC Disability Income
Plan, Case No. 05-4093, 2006 WL 3759578, at *4 (D.Kan. Dec. 19, 2006)(same).

> within the scope of the request. The court does not find that reasonable discovery
> contemplates that kind of wasteful effort.

Id. at *1.  Many of Grede's Requests for Production suffer from this infirmity.

Also, to the extent Grede seeks to compel the production of documents that were never requested through a formal request, but orally or through other informal means, its Motion must be denied.  This Court has held that letters and oral requests for production do not fall within Rule 34 and are thus unenforceable.  In Sithon Maritime Co. v. Holiday Mansion, Case No. 96-2262, 1998 WL 182785, at *2 (D. Kan. April 10, 1998), this Court held that informal requests for production lie outside the boundaries of the discovery rules and provide no basis for a motion to compel or for sanctions.  Id. at *2.  Thus, it is clear that in Kansas, only formal requests for production are acceptable and anything short of a formal request for discovery is unenforceable.

## 2.   Grede's Five Requests for Production of Documents it Relies Upon in its Motion to Compel Discovery to Obtain the Information it Desires

Grede's Motion to Compel falsely assumes that because its discovery requests are worded broadly enough to encompass virtually any document, UP has a continuing obligation to divine Grede's intent and produce whatever documents Grede may later deem responsive to its requests.  Such an argument turns Rule 34 on its head and ignores the precedent from this jurisdiction.  Before examining whether UP has failed to produce documents within the nine categories of documents Grede has identified, the Court should first consider the facial overbreadth of Grede's Requests that renders them invalid.  Grede's offending Requests state as follows:

> **Request No. 1**:  Produce a copy of **all** writings, recordings, and ESI **relating in any way to** any efforts by Union Pacific to repair or reconstruct the allegedly weakened track bed and structure.

**Request No. 2**:  Produce a copy of **all** writings, recordings, and ESI between Union Pacific and the City of Wichita **relating in any way to** proposed repairs to the **section of track** which is located **adjacent** to Grede's property.

**Request No. 4**:  Produce a copy of **all** writings, recordings, and ESI **relating to** track maintenance.

**Request No. 5**:  Produce a copy of **all** writings, recordings, and ESI **relating to** the condition of the track or track bed.[24]

This Court has long held that use of phrases such as "relating to" or "concerning" when used with respect to a general category or broad range of documents makes those discovery requests overly broad on their face.  Johnson v. Kraft Foods North Am., Inc., 238 F.R.D. 648, 658 (D.Kan. 2006); See also Cardenas, 232 F.R.D. 377, 382 (D.Kan. 2005); Sonnino v. Univ. of Kansas Hosp. Auth., 221 F.R.D. 661, 667 (D.Kan. 2004).  Given that Requests No. 1, 4, and 5 request general categories or a broad range of documents and use the phrase "relating to," those Requests are facially overbroad and unenforceable.

In addition to the foregoing objection, Union Pacific objected to Requests No. 1, 4, and 5 on the basis that they were unlimited in either scope of time and/or geographic scope.  This Court has held that a discovery request's lack of proper temporal scope can render it facially overbroad. Johnson v. Kraft Foods North Am., Inc., 236 F.R.D. 535, 543 (D.Kan. 2006); Hammond v. Lowe's Home Centers, Inc., 216 F.R.D. 666, 672 (D.Kan. 2003); See Cromwell v. Sprint Communications Co. L.P., Case No. 99-2125, 2000 WL 726339, at *8 (D.Kan. May 26, 2000)(indicating that lack of proper geographic scope can render a request facially overly broad). Grede attempted to limit the temporal and geographic scope by letter.  In that letter, Grede proposed limiting the geographic scope of these overly broad Requests "to the section of rails

---

[24] See Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. E," (emphasis in text added).

and bed which lies between E. Osie Street and E. Bayley Street," and their temporal scope to the period of time between January 1, 1996 and the present.[25]

Rather than limiting the scope of these three Requests, Grede's proposal actually broadened them. First, the subject derailment occurred on July 11, 2006. Grede's "proposed temporal scope limitation" would grant it access to ten years of records preceding the date of derailment and almost two years of records post-derailment. Track records from several years prior to the derailment are irrelevant and have nothing to do with any conditions present on or shortly before July 11, 2006. As noted above, under Johnson and Hammond, the temporal overbreadth of the almost twelve years of records sought by Grede with regard to this derailment renders these Requests facially overbroad. Second, the only trackage at issue in this case is the trackage adjacent to Grede's foundry. Grede's "proposed geographic scope limitation" actually expanded the area covered by these Requests to trackage running three blocks beyond the trackage adjacent to Grede's foundry. Given the limited geographic area at the heart of the instant case, Grede's geographic scope proposal is overly broad. See Cromwell, *supra*.

In addition, Grede's Requests No. 4 and 5 are exceedingly overbroad because as drafted, any conceivable document touching on the subject of "track maintenance" or on the subject of the "condition of the track or track bed" for a twelve-year period of time would be deemed responsive.[26] This Court has repeatedly rejected the extreme over breadth exemplified in these two discovery requests and it should do so again in this case. See e.g., Western Resources, Inc., *supra*; Aikens, *supra*; Bailey, *supra*.

---

[25] Letter from Counsel for Grede, Tara M. Mathison, to Counsel for Union Pacific, Craig M. Leff, dated March 4, 2008, attached as Ex. "3."

[26] The "twelve-year period of time" refers to Grede's proposed temporal limitation. As noted above, the initial Requests contained no temporal limitation whatsoever.

Union Pacific has never withdrawn its temporal and geographic scope objections to these Requests, but again, it produced many pages of "responsive" documents. Grede now wants more, and relies on these facially overly broad requests to get what it wants.

Further, Grede is now interpreting Request No. 2 in a manner that renders it is facially overbroad and ambiguous. Grede's Request No. 2, as set forth above, requested "all writings, recordings, and ESI between Union Pacific and the City of Wichita **relating in any way to** proposed **repairs** to the **section of track** which is **located adjacent** to **Grede's property**."[27] The reasonable assumption - and the one that was employed by Union Pacific - with regard to this Request was that it was limited to post-derailment repairs to the section of track located adjacent to Grede's property. As such, Union Pacific agreed to "produce documents exchanged between UP and the City of Wichita concerning **repairs** to the **section of track located adjacent to Grede's property** following the derailment that underlies this suit."[28] Union Pacific did not produce any such documents because it has located none that are responsive to Grede's request as drafted.

Grede now contends that, "although no related e-mails or any communications were produced by Union Pacific, Grede has learned through other sources that such communications exist....The documents produced by the City confirm that Union Pacific had engaged the City in negotiations to get the City to contribute to the cost of repairs to the **section of tracks at issue in this case**."[29] Grede apparently believes that because its request can be interpreted to include any document Grede wants, Union Pacific is therefore under a continuing obligation to provide

---

[27] See Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. E," (emphasis in text added).
[28] Id.
[29] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 9.

whatever documents Grede's counsel believes are responsive.  Grede's position reveals precisely

why Rule 34 requires documents to be identified with reasonable particularity.

**Grede's Request No. 2 shows the disconnect between what Grede wanted and what**

**it requested.**  A plain reading of Request No. 2 shows that Grede requested documents regarding

"proposed repairs to the section of track…located adjacent to Grede's property."  Union Pacific

produced nothing because it located no correspondence between it and the City of Wichita

regarding proposed repairs to the section of track adjacent to Grede's property.  Black's Law

Dictionary defines "adjacent" as "lying near or close to, but not necessarily touching."  BLACK'S

LAW DICTIONARY 44 (8th ed. 1999).

Here, the communications and/or e-mails Grede has attached as part of "Exhibit F" to

Grede's Motion deal with the proposed reconstruction of railroad grade crossings in downtown

Wichita and the city's placement of a storm drainage system on its own property adjacent to the

tracks.  Union Pacific's objection to Request No. 2 was based on the plain meaning of the words

"proposed repairs," "section of track," and "adjacent to Grede's property."  Had Union Pacific

foreseen that Grede would seek to broaden that scope of Request No. 2 and turn it into a

"moving target" based on the personal interpretation of it by Grede's counsel as it now has,

Union Pacific would have objected to this Request as overly broad from the outset.  See Johnson,

238 F.R.D. at 658; Cardenas, 232 F.R.D. at 382; Sonnino, 221 F.R.D. at 667.  Furthermore,

Grede's counsel's "Golden Rule" letter revealed the vast overbreadth of the request by insisting

that UP turn over any documents between UP and the City of Wichita for ten years before the

collision and two years since for various sections of track that are unrelated to the derailment.

With regard to Request No. 3, which Grede relies on in its Brief in Support of its Motion

to Compel Discovery as a basis to get certain of the above-referenced nine categories of

documents it now seeks, Union Pacific states that it believes it has produced all non-privileged documents identified or relied upon in answering Grede's Interrogatories No. 1 through 17 as it agreed to do in its Response to Request No. 3.

In light of the foregoing, this Court should overrule Grede's Motion to Compel Discovery and sustain Union Pacific's objections solely on the basis of the vast overbreadth and facial invalidity of Grede's discovery requests.

### 3. The Nine Categories of Documents that Grede Asserts Union Pacific Has Not Produced

Grede's assertions that Union Pacific has completely failed to produce certain enumerated documents that Grede claims to have requested is patently false. In fact, Grede has asserted that: "Union Pacific does not dispute [that] Grede is entitled to the requested information and continuously promises production, but has failed to turn over the following:

1. FRA inspection reports;
2. Notes of inspections;
3. Form A Track Bulletins;
4. Rail detector car reports;
5. Geometry car inspection reports;
6. E-mails related to track defects, conditions, repairs and maintenance;
7. Event data recorder from derailed train;
8. Work orders; and
9. Trouble Tickets."[30]

Quite to the contrary, Union Pacific has, in fact, produced the vast majority of the documents that Grede is claiming it has not produced and in some cases, the documents Grede wants have never been requested. Grede has not produced any document from UP referencing Grede's "entitlement" to the documents or "promise" to produce them. Union Pacific has produced the following documents from Grede's list of nine types of "un-produced" documents:

---

[30] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 2.

####     a.          **FRA Inspection Reports.**

Union Pacific has produced available track inspection records for the time period 2001-
2008.  These documents are maintained electronically by Union Pacific and produced in the
same manner in which they are kept in the ordinary course of Union Pacific's business.  While
these documents may not contain all the information that Grede wants, Union Pacific provided
these documents as they are kept in the ordinary course of its business.

####     b.          **Notes of Inspections**

Plaintiff states: "Union Pacific has not produced a single, hand-written note related to
these inspections (i.e., presumably Grede is referring to hy-rail and walking inspections), nor any
FRA reports, hundreds of which exist."[31]  As noted above, Union Pacific has produced the
available FRA track inspection reports.  As track inspector Wade Fisher testified, he used his
hand written notes to prepare the electronic FRA reports he filed but did not retain these notes
after the electronic version was filed.  Therefore, given Mr. Fisher and Mr. Romero's testimony
about their hand written notes from their track inspections, we assume that when Grede stated
"hundreds of which exist," it was only referring to FRA reports.[32]

####     c.          **Form A Track Bulletins**

Plaintiff has never formally requested any Form A Track Bulletins, also referred to as
slow orders.  While Grede's counsel indicated orally her desire to have such records and her
belief that such records were responsive to earlier document requests, no formal request for these

---

[31] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 6.
[32] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg6;
Deposition of Wade Fisher, pgs 12-15, 20, 22-23, 25, attached as Ex. "6; Deposition of Tommy Romero, pgs 19, 23,
attached as Ex. "7."

documents was served by Grede.[33]   Hence, there is no basis for compelling their production.

Nevertheless, Union Pacific has produced a significant amount of information on this topic.

The subject of slow orders was first broached during the depositions of Union Pacific

witnesses in Wichita on April 22-23, 2008.   On May 14, 2008, Union Pacific's counsel produced

to Grede's counsel a spreadsheet summary of all slow orders, including "Form A" and "Form B"

slow orders, issued for the subject track.   The spreadsheet summary provided the details of all

types of track bulletins issued by Union Pacific (including the date, the milepost limits of the

slow order, the timetable speed, the slow ordered speed, and the reason why the slow order was

issued) between January 1, 2000 and July 11, 2006 (i.e., the date of the derailment).

UP has not produced each individual slow order listed on the slow order spreadsheet

summary, nor has it ever agreed to do so due to the enormous burden associated with such a

production.   To retrieve each of the slow orders identified would entail a heavily time-

consuming, labor-intensive effort in which a UP employee would need to retrieve each slow

order individually.   If Grede serves a narrowly focused request for a particular slow order that

bears some reasonable relationship to the subject derailment, UP will not object to producing it.

UP does, however, object to Grede's position that it is entitled to each and every slow order ever

issued over a period exceeding ten years, especially when Grede has never requested such

documents formally.

#### d.      Rail Detector Car Reports

The detector car uses ultrasonic testing to detect rail defects that are not visible to the

naked eye.   If the detector car detects a defect, it so notes, identifying the specific location of the

---

[33] An example of the type of oral requests for documents that Grede has made, but that have never been followed up on with a formal, written request for production within the scope of Rule 34 can be found in the Deposition of Wade Fisher, pg 87, ln 1-20, attached as Ex. "6."   It should be noted that in this exchange, UP's counsel specifically asks for a formal, written document request and Grede's counsel indicates that one will be forthcoming.

defect.  These defects are noted on exception reports, which Union Pacific maintains

electronically.  While Grede never specifically requested these reports by name, Union Pacific

voluntarily produced DC Car Exception Reports reflecting any defects detected by a rail detector

car over the subject section of track between 1999 and 2008.  Grede has failed to acknowledge

this production, which occurred more than two months ago.

e.   **Geometry Car Inspection Reports**

The geometry car is a rail car the travels on the rails and measures the track's geometry,

including gauge, alignment, warp, etc.  If it detects a condition that falls outside the parameters

established by Federal law or Union Pacific's internal standards, it generates a defect report that

identifies the defect by type and location.  These defects are noted on exception reports, which

Union Pacific maintains electronically.  While Grede never specifically requested these reports

by name, UP has produced EC Car Exception Reports reflecting any defects detected by a rail

detector car over the subject section of track between 1999 and 2008.  These reports are further

contained in the broader "all defects" reports that reflect track defects, EC car exceptions, and

DC car exceptions.  Thus, Union Pacific has produced to Grede exactly the reports that it agreed

to produce.  To the extent that Grede seeks the production of additional documents with this

Motion, this Court should deny Grede's request based on the overbreadth issues address herein.

f. **Emails relating to track defects, conditions, repair and maintenance.**

As shown above, Union Pacific has produced many pages of documents responsive to

various discovery requests from Grede.  With regard to this particular topic, Grede has never

specifically requested such documents.  Grede's evidence that Union Pacific has failed to

produce all documents which Grede now asserts it has requested in its discovery concerns certain

communications between the City of Wichita and Union Pacific addressing railroad crossing

17

maintenance in downtown Wichita, as well as signalization failures.[34]  As addressed above, there is no way that Grede has requested these documents within any fair and reasonable reading of its five Requests for Production of Documents.

> ### g.    Event data recorder from Derailed Train.

In short, this document or information has never been requested in writing.  Further, there is no credible argument that the event recorder data from the train is in any way responsive to the discovery requests Grede has propounded upon Union Pacific.  Considering the ease with which Grede was able to identify the event recorder data in its Motion to Compel, there is no reason why Grede could not have requested these documents by name in a proper Rule 34 request.

> ### h.    Work Orders and/or Trouble Tickets

With regard to documents referred to as "work orders" and "trouble tickets," Grede is referring to documents that Union Pacific signalman Matt Kreidler referenced during his deposition.  These documents do not relate directly to the condition of the track, but are generated by Union Pacific's signal department in connection with reports of grade crossing warning system problems and malfunctions.  Notably, although the subject of trouble tickets and work orders was addressed during Mr. Kreidler's deposition, Grede never formally requested these documents at any point following Mr. Kreidler's deposition.  Once again, it would be unjust to find UP has failed to produce a document that Grede never requested with the same specificity with which the document was identified in Grede's Motion to Compel.

---

[34] See Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. F."

**4. Grede's Complaint that Union Pacific has Failed to Supplement its Discovery Resposnes**

Grede has taken issue with nine of Union Pacific's answers, objections and/or responses to certain of its Interrogatories.  Further, in a manner similar to the Requests it relies upon, Grede also relies upon three of these Interrogatories (Interrogatories No. 4, 11, and 12) as a basis for it to obtain nine separate categories of documents it asserts Union Pacific has failed to produce.  With regard to both the issues of supplementation and whether or not responsive information to the above-referenced nine categories of documents should be or has, in fact, been produced the Court should consider how these interrogatories have been drafted and the objections Union Pacific has raised to them.  Furthermore, interrogatories are not document requests and should not be treated as such.

**a.        Interrogatory No. 2.**

Grede complains that Union Pacific has failed to produced a privilege log regarding information withheld from disclosure on the basis of privilege and sets for a whole host of information that it asserts Union Pacific should include in the log.  However, Grede notes that "Union Pacific claims work product protection for **the only written documents** which purportedly relate to any discharge [of water] by Grede."[35]  In answer to this Interrogatory, Union Pacific referenced its answer to Interrogatory No. 1 and, between its responses to Interrogatories No. 1 and 2, clearly identifies that author of the subject written documents, stated what privilege Union Pacific is asserting, provides information about the subject documents' contents, and provides an approximate date for the subject document's creation.  In short, Union Pacific believes is has provided all information that it is required to produce in a privilege log in

---

[35] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 11 (emphasis added).

its answers and/or responses to Interrogatories No. 1 and 2.  However, if the Court desires Union Pacific to provide a formal "privilege log," it will, of course, be happy to do so.

### b.    Interrogatory No. 3

Grede's complaint with regard to UP's answer to Interrogatory No. 3 is that it believes that Union Pacific has failed to identify witnesses responsive to this discovery.  To the contrary, Union Pacific believes that the identity of all responsive witnesses have been identified as the names of these individuals were learned during the course of discovery, and primarily in depositions.  Under Rule 26(e)(1), Union Pacific has a duty to supplement its discovery responses "if…[it] learns that in some material respect the disclosure or response is incomplete…and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed.R.Civ.P. 26(e)(1).  Clearly, Union Pacific does not have to serve new supplemental interrogatory answers whenever it learns of witnesses with relevant knowledge if it learns of their existence in the presence of Grede.  City of Wichita, Kansas v. Aero Holdings, Inc., Case No. 98-1360, 2000 WL 33170895, at*2 (D.Kan. Oct. 23, 2000).

Further, Union Pacific notes Interrogatory No. 3 is a contention interrogatory that seeks "all facts" supporting allegations within one paragraph of a complaint.  "This Court has found that a contention interrogatory which seeks 'all facts' supporting allegations within one paragraph of a complaint is overly broad and unduly burdensome on its face."  Western Resources, Inc. v. Union Pacific R.R. Co., Case No. 00-2043, 2001 WL 1723817, at *2 (D.Kan. Dec. 4, 2001)(citing Hiskett v. Wal-Mart Stores, Inc., 180 F.R.D. 403 (D.Kan. 1998)).

###### c.        Interrogatory No. 4

Grede complains that: "Union Pacific's answer to Interrogatory No. 4 states, "See answer to interrogatory No. 4," that this response fails to answer this Interrogatory, and that Union Pacific has failed to provide a proper response.[36]  To the contrary, Union Pacific has provided a proper response.  First, it has contacted Grede and noted that its "See answer to interrogatory No. 4," response was a typo and Union Pacific intended to reference its answer to Interrogatory No. 3.  Second, Union Pacific has produced voluminous track inspection records, as well as DC car and EC car records that respond to and provide the information sought in Interrogatory No. 4.

A couple of additional points are worth making.  As noted above, Interrogatory No. 4 is a contention interrogatory that seeks "all facts" supporting allegations within one paragraph of a complaint.  Under Western Resources, Inc., such an interrogatory is "overly broad and unduly burdensome on its face." Western Resources, Inc., Case No. 00-2043, 2001 WL 1723817, at *2. Further, Interrogatory No. 4(c) seeks "**all** writings, recording, and ESI **relating in any way to** Union Pacific's investigation into the stability of the track."[37]  Under Johnson, 238 F.R.D. at 658; Cardenas, 232 F.R.D. at 382; Sonnino, 221 F.R.D. at 667, the information sought in "subpart c" is facially overly broad and unduly burdensome.

###### d.        Interrogatories No. 10, 11, and 12

Union Pacific stands on the objections it has raised as to Interrogatories 10, 11, and 12.

###### i.        Interrogatory No. 10

Union Pacific objected to Interrogatory No. 10 on the basis of Grede's failure to reasonably limit its applicable scope of time, because it involves a period too remote from the subject derailment, and due to the burden responding to it would impose on Union Pacific. In

---

[36] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 13.
[37] See Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. F."

sum, Union Pacific objected to this Interrogatory because it is overly broad.  See e.g., Johnson,

236 F.R.D. at 543; Hammond, 216 F.R.D. at 672.  Grede does not really address the merits of

Union Pacific's objections.  Rather, it attacks Union Pacific's response that "it is presently

unaware of any occasion where the tracks were washed out or damaged due to heavy rains or

flooding during the two years preceding the accident."  Grede's attack focuses on the testimony

of Union Pacific employee Matt Kreidler that the area by Grede's foundry was "always wet."[38]

A couple of points are worth raising.  First, just because the area by the foundry was

"always wet" does not mean that tracks had been "washed out or damaged due to heavy rains or

flooding" as required by Interrogatory No. 10.  Second, it does not appear, from a review of Mr.

Kreidler's deposition, that he ever said "there was 'always' standing water along the tracks."[39]

Third, Interrogatory No. 10(f) seeks "**all** writings, recording, and ESI **relating to the damage**."[40]

Under Johnson, 238 F.R.D. at 658; Cardenas, 232 F.R.D. at 382; and Sonnino, 221 F.R.D. at

667, the information sought in "subpart f" is facially overly broad and unduly burdensome.

### ii.      Interrogatory No. 11

Union Pacific objected to Interrogatory No. 11 on the basis of Grede's failure to

reasonably limit its applicable scope of time, because it involves a period too remote from the

subject derailment, and due to the burden responding to it would impose on Union Pacific.  In

sum, Union Pacific objected to this Interrogatory because it is overly broad.  See e.g., Johnson,

236 F.R.D. at 543; Hammond, 216 F.R.D. at 672.  Again, Grede does not really address the

merits of Union Pacific's objections.  Rather, it attacks Union Pacific's response, made subject to

its objections, that it has produced two geometry car reports from a reasonable period of time

---

[38] Deposition of Matt Kreidler, pg 21, attached as Ex. "8."
[39] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 13.
[40] See Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavitas "Ex. F."

before the derailment and that it will supplement this response.  Grede also asserts "[w]e now know there could be hundreds of responsive documents," but does not clearly explain how this is known.[41]

As stated above, Union Pacific must stand on its undue burden, remoteness, and lack of temporal scope objections to this Interrogatory.  Specifically, Union Pacific notes that Interrogatory No. 11(b) seeks "**all** writings, recording, and ESI **relating to** the defects in the tracks described in your response."[42]  Under Johnson, 238 F.R.D. at 658; Cardenas, 232 F.R.D. at 382; and Sonnino, 221 F.R.D. at 667, the information sought in "subpart b" is facially overly broad and unduly burdensome.

In addition, since the time of its initial answer, Union Pacific has produced a significant volume of records reflecting the date and location of various defects detected by manual inspection, rail detector car, and geometry car.  These documents, which Grede's counsel covered at length during the depositions of Union Pacific witnesses, provide the substance of the information requested in the interrogatory.

### iii.        Interrogatory No. 12

Union Pacific objected to Interrogatory No. 12 on the basis of Grede's failure to reasonably limit its applicable scope of time, because it involves a period too remote from the subject derailment, and due to the burden responding to it would impose on Union Pacific. Again, in sum, Union Pacific objected to this Interrogatory because it is overly broad.  See e.g., Johnson, 236 F.R.D. at 543; Hammond, 216 F.R.D. at 672.  For a third time, Grede does not really address the merits of Union Pacific's objections.  As it did with Interrogatories No. 10 and 11, Union Pacific stands on its objections and notes that Interrogatory No. 12(b) seeks "**all**

---

[41] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 13.
[42] See Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. F."

writings, recording, and ESI **relating to** these repairs or reconstructions."[43]  Under <u>Johnson</u>, 238

F.R.D. at 658; <u>Cardenas</u>, 232 F.R.D. at 382; and <u>Sonnino</u>, 221 F.R.D. at 667, the information

sought in "subpart b" is facially overly broad and unduly burdensome.

**e.      Interrogatories No. 13 through 16.**

In response to these Interrogatories, Union Pacific produced documents pursuant to Rule

33(d).  The identity of the individuals with knowledge of the facts concerning Union Pacific's

damage's claim are revealed in these documents.  As detailed in the "recollectible file," which

UP produced to Grede, the costs Union Pacific incurred because of the derailment have multiple

sources and include invoices from multiple third parties who provided labor or materials in

connection with the repairs to the damaged track.[44]  The file that Union Pacific produced

identified these individuals and entities, allowing Grede to learn their identities.  Under Rule

26(e) because the identity of these individuals have been made know to Grede during the course

of discovery and in writing, Union Pacific does not now need to independently identify them.

<u>See</u> Fed.R.Civ.P. 26(e)(1).  Of course, if additional witnesses who are not revealed in the

documents produced under Rule 33(d) in response to these Interrogatories come to Union

Pacific's attention, those individuals will be timely identified.

**5.  Union Pacific's Failure to Supply a Signed Verification Page for its Discovery**

Union Pacific acknowledges that it needs to supply Grede with a signed verification page

for its discovery responses.  Union Pacific will be doing so shortly.  However, the absence of a

signed verification page for UP's discovery responses has not prejudiced Grede since the person

signing on behalf of a corporation, here Union Pacific, does not necessarily need to have

---

[43] <u>See</u> Doc. # 60 - Plaintiff's Responses and Objections to Defendant [Grede's] Requests for Production of Documents, served January 11, 2008, attached to Mathison Affidavit as "Ex. F."

[44] Union Pacific has informed Grede that the documents in UP's "recollectible file," which UP has produced, form the basis of its damages claim.  E-mail from Counsel for Union Pacific, Craig M. Leff, to Counsel for Grede, Tara M. Mathison, dated February 11, 2008, attached as Ex. "9."

personal knowledge of all facts set forth therein and is allowed to rely on counsel's coordination and/or preparation of responses.  See Shepherd v. Am. Broadcasting Companies, Inc., 62 F.3d 1469, 1482 (D.C. Cir. 1995); Gucci Am. Inc., v. Exclusive Sports, Int'l, Case No. 99-11490, 2002 WL 1870293, *7-8 (S.D.N.Y Aug. 13, 2002).

### 6.  Union Pacific's Alleged Delay in Responding to Grede's Discovery Requests

Grede has asserted that Union Pacific has been involved in delaying tactics with regard to its answers and/or responses to the discovery addressed in Grede's Motion to Compel Discovery. As shown from the Statement of Facts above, this just simply is not the case.

Quite contrary to the way it has been portrayed by Grede in its Motion to Compel Discovery, Union Pacific has made good faith efforts to comply with what it considered to be vastly overbroad and inappropriate discovery requests.   Even though Grede's counsel failed to timely provide Union Pacific with its "Golden Rule" and/or to file its motion to compel, Union Pacific agreed not to hold Grede's "feet to the fire" as it could have done under L.R. 37.1(b).[45] See L.R. 37.1((b)(which requires all motions to compel discovery to be filed within 30-days of receipt by the propounding party of the default, answer, response, or objection in issue and that failure to do so results in waiver of the propounding party's objection to said default, answer, response, or objection).

Further, Union Pacific thinks that it is entitled to far more credit regarding its discovery responses in this case than Grede allows.  If fact, the Court should know that, in stark contrast to the general tenor of Grede's Brief in Support of its Motion to Compel Discovery, Union Pacific has produced more than 690 pages of documents in this case.[46]  Without question, the sheer number of pages of documents produced by Union Pacific, even with its sincere reservations

---

[45] E-mail correspondence from Counsel for Grede, Tara M. Mathison, to Counsel for Union Pacific, Craig M. Leff, dated March 5, 2008, attached as Ex. "10";
[46] See "Exhibit A" to Affidavit of Craig M. Leff, attached as Ex. '5."

about the propriety and properness of Grede's requests, is strong evidence that it has been proceeding with discovery in this case in good faith.

As noted above, it is Union Pacific's position that Grede itself bears much of the blame for the present discovery problems. As set forth herein, Grede has primarily issued nothing but facially overbroad discovery requests. The over breadth of Grede's discovery requests is now being compounded by Grede's counsel's improper oral requests for documents.[47]  See Holiday Mansion, *supra*. As it has candidly admitted, "Grede is in the foundry business, not the railroad business."[48]  As a result, Grede and its counsel are not familiar with the methods in which railroads keep their documents. While Union Pacific understands its duty of cooperation in the discovery process, Union Pacific does not believe it is Union Pacific's duty educate its adversary or assist Grede in crafting appropriate discovery requests.  Grede's counsel has taken to making oral requests for documents or other discovery without ever formally requesting the documents in writing under Rule 34.[49]  In addition, it appears that much of the information that Grede is now complaining about not receiving was never requested.  In fact, had Grede served document requests that identified documents with the same detail and particularity that Grede has used in its Motion to Compel, most these problems likely could have been avoided.

Lastly, Union Pacific believes that there is no basis for an imposition of sanctions against it in the present case.  UP did not assert frivolous objections to the subject discovery and it does not believe it should be penalized for standing on those objections given the valid reasoning it has set forth for them in its Response to Grede's Motion.  In addition, as noted above, UP has

---

[47] See footnote 36, *supra*.
[48] Defendant Grede Foundries, Inc.'s "Brief in Support of Grede's Motion to Compel Discovery," Doc # 60, pg 5, n. 5.
[49] See footnote 33, *supra*.

produced a significant amount of discovery in this case and there is no evidence that Union Pacific has in any way acted in bad faith during the course of this litigation.

WHEREFORE, for the foregoing reasons, Union Pacific Railroad Company, respectfully requests that the Court deny Grede's Motion to Compel Discovery; deny Grede's request for attorney's fees and/or sanctions against Union Pacific, and for all such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

**YERETSKY & MAHER, L.L.C.**


By:   /s/ Craig M. Leff
     James M. Yeretsky        KS#12355
     Gregory F. Maher        KS#11061
     Craig M. Leff            KS#16251
     Christopher C. Confer    KS#21419
Southcreek Office Park
7200 West 132nd Street, Suite 330
Overland Park, Kansas 66213
Telephone: (913) 897-5813
Facsimile:  (913) 897-6468
**ATTORNEYS FOR PLAINTIFF**
**UNION PACIFIC RAILROAD COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2008, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Mr. James E. Braza
Ms. Heather Gatewood
Ms. Tara M. Mathison
Davis & Kuelthau, S.C.
111 East Kilbourn Ave., Suite 1400
Milwaukee, WI 53202

Mr. Jeffrey A. Jordan
Foulston Siefkin, LLP
Bank of America Tower, Ste. 1400
534 S. Kansas Avenue
Topeka, KS 66603-2326

Mr. James D. Dendinger
Mr. Ladd R. Gibke
Cozen O'Connor
2300 Comerica Tower
1717 Main Street
Dallas, TX  75201-7335

Mr. Steven R. Smith
Render Kamas, LC
345 Riverview, Suite 700
P.O. Box 700
Wichita, KS  67201

_____/s/ Craig M. Leff_____
Craig M. Leff

S:\628\pldgs\sio motion compel - 5-30 revised.doc