## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 07-1279-MLB-DWB |
| | ) | |
| GREDE FOUNDRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Presently before the court is the Motion to Compel Discovery and supporting brief filed by Defendant Grede Foundries, Inc. (hereinafter "Defendant" or "Grede"). (Doc. 59, 60.) Plaintiff Union Pacific Railroad Company (hereinafter "Plaintiff," "Union Pacific," or "UP") filed a Memorandum in Opposition (Doc. 66), and Defendant replied (Doc. 73). Having carefully reviewed the submissions of the parties, the Court is prepared to rule.[1]

## BACKGROUND

---

[1] Defendant's initial brief, in part, asks the Court to order Plaintiff to produce witness Brian Gorton for deposition. (Doc. 60, at 10.) There is no discussion of this issue in Plaintiff's response or Defendant's reply. (*See generally* Docs. 66 and 73.) Shortly after Plaintiff's motion was filed, the court held a status conference with counsel. (Doc. 63.) During that conference, discussions were held about the scheduling of depositions and the parties were directed to cooperate in the scheduling of certain depositions. As such, the Court will surmise that the deposition scheduling issue has been resolved.

The events at issue arise from a train derailment in Wichita, Kansas, on July 11, 2006.  After derailing, the train, which was owned and operated by Union Pacific, collided into certain buildings, including one owned by Defendant.

Union Pacific filed its Petition in Sedgwick County court on August 15, 2007.  (Doc. 1, at 4.)  In its Petition, Plaintiff alleges that "[t]he derailment was caused by Gredes [sic] negligently or intentionally discharging water from its Wichita foundry onto or near Union Pacific's railroad tracks, which are adjacent to the west side of Grede's Wichita factory."  (*Id.*, at 5.)  Plaintiff brought claims of negligence and trespass.  The case was removed to United States District Court for the District of Kansas by Defendant on September 17, 2007.  (*Id.*, at 1.)

Defendant answered on October 3, 2007, generally denying Plaintiff's allegations and raising certain affirmative defenses, including the applicable statutes of limitation.  (*See generally* Doc. 14.)  Defendant also brought a counterclaim, seeking payment for its business interruption loss.  (*Id.*)  Defendant alleges that Plaintiff had admitted responsibility for the defective track and reimbursed Defendant for property damage, prior to filing the present lawsuit.  (Doc. 14, at ¶¶ 6-10.)  Defendant further alleges that Plaintiff had agreed to pay the business interruption loss Defendant sustained as a result of the derailment.  (*Id.*)  Defendant also brought a claim for punitive damages, contending that Plaintiff

2

"knew or should have know that its defective rail was substantially certain to cause property damage, business interruption loss, and potentially the loss of life" to Defendant and/or its employees.  (*Id*., at  ¶ 25.)

Defendant served the discovery requests at issue on December 13, 2007. (Doc. 20.)  Plaintiff served its responses and objections to Defendant's Requests for Production on January 11, 2008 (Doc. 25.)  After receiving an extension, Plaintiff submitted its initial, unsigned responses and objections to Defendant's Interrogatories on February 11, 2008.  (Doc. 33.)

The parties subsequently engaged in various communications in an attempt to reach an amicable solution to the discovery disputes.  (*See* Doc. 60, at 2; Doc. 66, at 3-4, 7.)  Although unsuccessful, these efforts constitute compliance with the parties' duty to confer in good faith in accordance with D.Kan. Rule 37.2.

## DISCUSSION

**A.    Burden for Relevance and Objections.**

Fed. R. Civ. P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "'Discovery relevance is minimal relevance,' which means it is possible and

reasonably calculated that the request will lead to the discovery of admissible evidence." ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).

"Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D.Kan.1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." ***Snowden By and Through Victor v. Connaught Lab.***, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991)

> When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

***Johnson v. Kraft Foods North America, Inc***., 238 F.R.D. 648, 653 (internal citation omitted). "Courts should lean towards resolving doubt over relevance in favor of discovery." ***Id***. (citing ***Corrigan v. Methodist Hosp.***, 158 F.R.D. 54, 57

(E.D. Pa.1994)).

Once the low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections); *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting a discovery request based on relevancy grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to the discovery of admissible evidence, or burdensome").  The party opposing discovery is required to come forth with more than a mere conclusory statement that the discovery is objectionable and must specifically demonstrate how the request is not reasonably calculated to lead to the discovery of admissible evidence.  *Teichgraeber*, 932 F.Supp. at 1266 (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir.1982)).  For a request to be considered "overly broad" or "unduly burdensome," it typically must require "a responding party to exercise unnecessary time and effort to ponder, speculate, and decide to what extent it must rummage through documents to distinguish what is and what is not responsive."  *Pulsecard,*

*Inc. v. Discover Card Services, Inc*., No. 94-2304-EEO, 1995 WL 526533, at *3 (D.Kan. Aug. 31, 1995).  The Court will address in turn the various categories of Plaintiff's discovery requests and Defendants' objections at issue.

**B.      Geographic and Temporal Scope of Defendant's Document Requests**.

Plaintiff objects that Defendant's proposed temporal and geographic limitations render Defendant's discovery requests facially overbroad.  (Doc. 66, at 11.)  Unless the requests are found to be overly broad on their face, Plaintiff, as the party resisting discovery, has the burden to support its objections.  *Cromwell v. Sprint Communications L.P.*, No. Civ. A. 99-2125-GTV, 2000 WL 726339, *8 (D.Kan. May 26, 2000) (citing *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D.Kan.1999); *Daneshvar v. Graphic Technology, Inc.*, No. 97-2304-JWL, 1998 WL 726091, *1 (D.Kan. Oct. 9, 1998); *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186 (D.Kan. 1997)).  "This rule applies to any objection to the temporal or geographic scope of the request."  *Id*. (citing *Daneshvar*, 1998 WL 726091, at *1; Hilt, 170 F.R.D. at 186)).  Defendant's requests typically seek documents relating to "track conditions, inspections, defects, maintenance and repairs" for the section of track between E. Osie Street and E. Bayley Street in Wichita, Kansas (an area of

four city blocks), from July 1, 1996 to the present.[2]  (*See* Doc. 66-4.)

### 1.      Temporal limitation.

Plaintiff has objected that "the temporal overbreadth of the almost twelve years of records sought by Grede with regard to this derailment renders these Requests facially overbroad."  (Doc. 66, at 11.)  Under many circumstances, the Court would be inclined to agree with Plaintiff's objections regarding document requests seeking more than a decade's worth of documents.

Defendant, however, specifically alleges that Plaintiff "was responsible for remediating the known defective conditions of its tracks regardless of the cause of the defect."  (Doc. 60, at 4-5.)  In this context, Defendant has identified a witness – employed by Plaintiff – who testified that every time he was in the area over the past 15 years, "the ground was always wet between Harry Street and Grede Foundry."  (Doc. 62-11, at 8.)  This witness also testified that, prior to the derailment, other of Plaintiff's employees were aware of problems with tracks in the area, were concerned about a potential derailment, and spoke of their frustrations in trying to rectify the situation.  (*Id.*, at 9-15.)

---

[2] As initially written, Defendant's document requests had no temporal or geographic limitations and would have encompassed virtually any documents relating to Union Pacific's tracks, repairs, and/or maintenance at any time and in any location.  (*See generally* Doc. 62-6.)  Such requests, most certainly, would have been deemed objectionable.  As noted above, however, Defendant provided time and spacial limitations in its March 4, 2008, correspondence to opposing counsel.  (Doc. 66-4.)

Courts in this District have held that "a party objecting to discovery on the basis of overbreadth must substantiate its objection, unless the discovery appears overly broad on its face." *Cory v. Aztec Steel Bldg., Inc*., 225 F.R.D. 667, 677 (D.Kan. 2005) (citing *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D.Kan. 1999)).  The Court in *Cory* held that an interrogatory seeking the number of warranty claims made to the defendant over a twelve year period had a "reasonable temporal scope".  *Id*.

Even assuming that the discovery requests at issue – which have a similar time frame as the interrogatory in *Cory* – were facially overbroad, Plaintiff has not substantiated its objection.  Rather, Plaintiff has "made only a conclusory statement that the information sought is overly broad."  *Id*.; *see also* Doc. 66, at 11. Conversely, Defendant has adequately described its particularized need for the documents.  Plaintiff's objection regarding the temporal scope of Defendant's discovery requests is, therefore, **OVERRULED**.

**2.    Geographic limitation**.

Plaintiff also contends that Defendant's "'proposed geographic scope limitation' actually expanded the area covered by these Requests to trackage running three blocks beyond the trackage adjacent to" Defendant's facility.  (Doc. 66, at 11.)  Plaintiff objects that this is overly broad considering "the limited

8

geographic area at the heart of the instant case." (*Id*.)

Based on the Court's understanding of the area in question, the distance between E. Bayley Street and E. Osie Street is four blocks.  The Court does not agree that a request encompassing four city blocks is facially overly broad, especially considering the nature of drainage issues.[3]  For these reasons, the Court **OVERRULES** Plaintiff's objection that the requests are geographically overbroad.

## C.     The Use of Omnibus Terms.

Plaintiff argues that Defendant "falsely assumes that because its discovery requests are worded broadly enough to encompass virtually any document, Union Pacific has a continuing obligation to divine Grede's intent and produce whatever documents Grede may later deem responsive to its requests."  (Doc. 66, at 9.) Plaintiff contends that Defendants Requests for Production Nos. 1, 2, 4, and 5 are all objectionable because they use the terms "relating in any way" or "relating to."

---

[3] Plaintiff states that "the only trackage at issue in this case is the trackage adjacent to Grede's foundry."  (Doc. 66 at 11.)  Plaintiff cites a legal dictionary definition of "adjacent" as "lying near or close to, but not necessarily touching."  (*Id.* at 13.)  Elsewhere, Plaintiff recites that it has produced FC Car Exception Reports reflecting track defects "over the subject section of track" and that these reports "covered a section of track two miles north and two miles south of the site of the derailment."  (*Id.* at 4.)  Plaintiff also states it produced FRA-mandated track inspections for a similar section of track.  (*Id.*)  It therefore appears to the court that Plaintiff's present complaints about Defendant's identification of an area of track four city blocks in length – considerably less than 2 miles –  are, at best, disingenuous.

(*Id*., at 9-10.)

Plaintiff correctly observes that Courts in this District have held that a discovery request may be facially overly broad if it uses an "omnibus term" such as "relating to," "pertaining to," or "concerning." ***Johnson v. Kraft Foods North America, Inc***., 238 F.R.D. 648, 658 (D.Kan. 2006) (citing ***Cardenas v. Dorel Juvenile Group, Inc.***, 232 F.R.D. 377, 382 (D.Kan.2005) (internal citations omitted)).  "That rule, however, applies only when the omnibus term is used with respect to a general category or broad range of documents." *Id*.  *See also **Sonnino v. University of Kansas Hosp. Authority***, 221 F.R.D. 661, 667 (D.Kan.2004); ***Aikens v. Deluxe Fin. Servs., Inc.***, 217 F.R.D. 533, 538 (D.Kan.2003).

Courts want to avoid a situation in which a party upon whom discovery is served needs "either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *Id*.  "When, however, the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents, the request will not be deemed objectionable on its face." *Id*.  The Court will, therefore, address each of the document requests to which Plaintiff has objected.

Defendant's Request No. 1 seeks "all writings, recordings, and ESI relating

10

in any way to any efforts by Union Pacific to repair or reconstruct the allegedly weakened track bed and structure." (Doc. 62-6, at 1.) Plaintiff, as the objecting party, "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Allianz Ins. Co. v. Surface Specialties, Inc.*, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D.Kan. Jan. 7, 2005) (internal citation omitted). Simply stated, it is the Court's opinion that Plaintiff has failed to do so. Rather, Plaintiff merely contends that "a broad term such as 'relate to' provides no basis upon which a party can reasonably determine what documents may or may not be responsive." (Doc. 66, at 8.) Given the clarified geographic and temporal scope Defendant previously supplied to Plaintiff, as well as Defendant's specifically described need for the information, the Court finds that Request No. 1 seeks a "sufficiently specific type of information" as opposed to large or general categories of documents. *Johnson*, 238 F.R.D. at 658.

The same is true of Request for Production No. 2, which seeks all documents "between Union Pacific and the City of Wichita relating any way to proposed repairs to the section of track which is located adjacent to Grede's property" and Request No. 5, which seeks documents "relating to the condition of the track bed."

11

(Doc. 62-6, at 1-2.)  With Defendant's proposed temporal and geographic scope limitations, and stated need, the Court finds that Plaintiff would not have to "guess" which documents "may conceivably contain some detail, either obvious or hidden, within the scope of the request." *Johnson*, 238 F.R.D. at 658.  Plaintiff's objection that Requests Nos. 1, 2, and 5 are facially overbroad is **OVERRULED**.

The same cannot be said for Defendant's Request No. 4, which seeks all documents "relating to track maintenance."  (Doc. 62-6, at 2.)  The Court agrees with Plaintiff that the use of the generic term "track maintenance" coupled with the omnibus term "relating to" is facially overbroad.  Plaintiff's objection to the overbreadth of Request No. 4 is **SUSTAINED**.

Plaintiff also complains that Defendant did not seek certain documents "by name."  (*See* Doc. 66, at 17-18.)  Plaintiff specifically complains that "it would be unjust to find UP has failed to produce a document that Grede never requested with the same specificity with which the document was identified in Grede's Motion to Compel."  (*Id*., at 18.)  The Court finds Plaintiff's argument wholly unpersuasive.  Defendant's motion was written and filed following depositions of several UP employees, during which many of the documents at issue were apparently discussed for the first time.  (*See* Doc. 60, at 5.)

As Defendant states, Plaintiff "seems to suggest that Grede, a foundry – not

a railroad, should somehow first obtain institutional knowledge so that it can

specifically identify Union Pacific documents by name." (Doc. 73, at 7.)  Common

sense dictates that a party seeking institutional documents from another company

in an entirely different industry will, most likely, not have the slightest idea how

the producing party categorizes or names its specific documents.  Obviously, a

requesting party in that situation will be forced to word discovery requests in a

more generalized way in order to encompass the types of information and

documents sought.  Plaintiff's objection is, therefore, **OVERRULED**.

## D.    Categories of Documents at Issue.

Given these rulings on Plaintiff's objections, the Court will now turn to the

various categories of documents Defendant contends should have been produced.

Defendant lists nine categories of documents,[4] which it says "Union Pacific does

not dispute Grede is entitled to . . . and continuously promises production, but has

failed to turn over." Doc. 60, at 2.)  Plaintiff responds that "to the contrary, Union

Pacific has, in fact, produced the vast majority of the documents that Grede is

claiming it has not produced and in some case, the documents Grede wants have

---

[4] The categories of documents are 1) FRA inspection reports; 2) notes of inspections;
3) Form A Track Bulletins; 4) rail detector car reports; 5) geometry car inspection reports;
6) e-mails related to track defects, conditions, repairs, and maintenance; 7) event data
recorder from the derailed train; 8) work orders; and 9) trouble tickets.  (Doc. 60, at 2.)

13

never been requested." (Doc. 66, at 14.) The Court will address whether these documents fall under Defendant's nonobjectionable document requests (Nos. 1, 2, and 5) and, if so, whether Plaintiff has responded appropriately.

### 1. FRA inspection reports.

Defendant contends that reports of Union Pacific's daily hy-rail inspection[5] are submitted to the FRA twice a week and are required to be retained for at least two years. (Doc. 60, at 6.) Plaintiff states it has produced the available track inspection records from 2001-2008 in the same manner in which they are kept in the ordinary course of business. (Doc. 66, at 15.) Defendant replies that Plaintiff has produced certain summaries, "but without the actual reports, Union Pacific's own inspector testified he cannot provide the details of track conditions or the results of his own inspections by simply looking at the documents Union Pacific has produced to date." (Doc. 73, at 4.)

The Court finds that these full reports fall under Defendant's Request No. 5, which seeks documents "relating to the condition of the track or track bed." (Doc. 62-6, at 2.) To the extent Plaintiff has maintained and/or has access to the relevant underlying reports encompassed by Defendant's time and geographic limitations,

---

[5] This inspection "involves driving a truck along an 80 mile segment of track which includes the area at issue in this case." (Doc. 60, at 6.)

the same are discoverable and should be produced.  To the extent Plaintiff has

produced all such documents, or no additional documents exist, the same are

appropriate supplemental responses.  Defendant's Motion to Compel is

**GRANTED** as it relates to FRA inspection reports.

      **2.**      **Notes of inspections**.

      Defendant argues that "Union Pacific doesn't give much of an explanation

as to why it has produced no notes of inspections."  (Doc. 73, at 12.)  Although two

of Plaintiff's employees have testified that they do not retain their inspection notes,

Defendant contends that this does not mean that no notes of inspections exist.  (*Id*.)

Plaintiff's response refers only to the testimony of one of these employees, who

indicated that he did not retain his notes after the subsequent electronic report

compiled from those notes (FRA inspection report, *see* subsection 1, supra) was

filed.  (Doc. 66, at 15.)

      The Court agrees with Defendant that simply because two of the individuals

who perform inspections did not retain their notes after filing the FRA reports does

not mean no responsive documents exist.  Plaintiff has not indicated it has made a

reasonable inquiry of any and all other employees who performed the subject

inspections to determine whether any notes exist relating to the track within the

previously stated temporal and geographic limitations.  Plaintiff is ordered to do

so.  To the extent Plaintiff has produced all such documents, or no additional documents exist, the same are appropriate supplemental responses.  Defendant's Motion to Compel is **GRANTED** as it relates to notes of inspections.

### 3.    Form A track bulletins.

"Form A Track Bulletins" are issued when a defect is detected on a non-FRA reporting day.  (Doc. 60, at 7.)  The issuance of this form results in a "slow order," which orders the decrease in train speeds in the affected area.  (*Id*.)  Plaintiff has produced a <u>list</u> of approximately 700 slow orders from September 2000 to July 11, 2006, but apparently <u>none</u> of the underlying Form A's.  (*Id*.)  Plaintiff argues that Defendant "has never formally requested any Form A Track Bulletins," although defense counsel "indicated orally her desire to have such records and her belief that such records were responsive to earlier document requests . . . "  (Doc. 66, at 15.)  The Court finds that these forms are responsive to Defendant's Request No. 5, regarding the condition of the track or track bed.  (Doc. 62-2, at 2.)

Plaintiff mentions the burden involved with compiling and producing the documents at issue would be "significant" or "enormous," stating that it would require someone to manually input and retrieve each record individually and that this would be "labor intensive and time consuming."  (Doc. 66 at 6, 16.)

16

Unfortunately, Plaintiff offers nothing more than these general conclusory statements regarding the potential burden.

> The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, the discovery request is overly broad or burdensome by submitting affidavits or offering evidence revealing the nature of the burden. Plaintiff provides no such affidavits or evidence.

***DIRECTV, Inc. v. Puccinelli***, 224 F.R.D. 677, 688-89 (D.Kan. 2004) (citation omitted).

While the court believes that Plaintiff has failed to adequately establish that production of these bulletins would be unduly burdensome, the court will pursue a bifurcated approach to production of these bulletins. Plaintiff shall initially produce all such Form A track bulletins for the period from July 11, 2004 through July 11, 2006. In addition, Plaintiff states that the list it has previously produced of these bulletins contains "the reason the slow order was issued." (Doc. 66 at 5, 16.) Accordingly, Defendant may be able to ascertain from this description whether a particular bulletin was issued due to water seepage or other similarly related events. Defendant may identify any specific bulletins from the list which indicates such a cause for a slow order and Plaintiff shall produce the underlying bulletins for those designated incidents that occurred within the previously stated temporal and geographic limitations. If, after completing the review of these specific

bulletins, Defendant believes that additional discovery is necessary it may seek such from the court.  Defendant's Motion to Compel is **GRANTED IN PART** and **DENIED IN PART, WITHOUT PREJUDICE**,  as it relates to Form A track bulletins.

       **4.**     **Rail detector car reports**.

      Every 90 days, a rail detector car using ultrasonic technology inspects Union Pacific's rails for internal weakness and/or breaks.  (Doc. 60, at 7.)  Defendant contends that Plaintiff "has not produced a single report generated from a detector car inspection."  (*Id.*)  Plaintiff responds that it "voluntarily produced DC Car Exception Reports reflecting any defects detected by a rail detector car over the subject section of track between 1999 and 2008."  (Doc. 66, at 17.)  Defendant replies, however, that "Union Pacific produced <u>no</u> DC Car exception reports." (Doc. 73, at 4.)  If Plaintiff has produced only summaries of these reports rather than the actual underlying reports themselves, this is insufficient.  The actual underlying reports are to be produced if they have not already been produced.  To the extent Plaintiff has produced all such documents, or no additional documents exist, the same are appropriate supplemental responses.  Defendant's Motion to Compel is **GRANTED** as it relates to rail detector car reports.

       **5.**     **Geometry car inspection reports**.

Geometry cars check the relative elevation, angling, tilting, warp and/or dips in the rails.  (Doc. 60, at 8.)  One of Plaintiff's employees has testified that such inspections occur every three to 12 months.  (*Id*.)  Defendant contends, however, that only two reports have been produced, "one of which was produced in a graphical format, indecipherable to Union Pacific's own inspector, much less to Grede."  (*Id*.)  Plaintiff responds that although Defendant never requested these documents "by name, UP has produced EC Car Exception Reports reflecting any defects detected by rail detector car over the subject section of track between 1999 and 2008."  (Doc. 66, at 17.)  Defendant replies that the summaries provided by Plaintiff do "not contain all the information which is contained in the actual report," such as "the level of severity of the defects detected."  (Doc. 73, at 3-4.)

Regardless of whether Defendant requested geometry car inspection reports "by name," the description of the report clearly brings it under Defendant's Request No. 5, seeking documents "relating to the condition of the track or track bed."  (Doc. 62-6, at 2.)  To the extent the underlying reports exist, the same are to be produced.  To the extent "decipherable" documents exist explaining the one report produced to Defendant in "graphical format," the same are also to be produced.  To the extent Plaintiff has produced all such documents, or no additional documents exist, the same are appropriate supplemental responses.

19

Defendant's Motion to Compel is **GRANTED** as it relates to geometry car inspection reports.

### 6. E-mail relating to track defects, conditions, repairs, and maintenance.

Defendant complains that "[n]ot a single email communication regarding track inspections, conditions or repairs has been produced." (Doc. 60, at 8.) Again, Plaintiff contends that Defendant "has never specifically requested such documents." (Doc. 66.) The Court does not agree. E-mail communication regarding track repairs would fall under Defendant's Request No. 1, seeking all documents "relating in any way to any efforts by Union Pacific to repair or reconstruct the allegedly weakened track bed and structure" and/or Request No. 2 for documents "between Union Pacific and the City of Wichita relating any way to proposed repairs to the section of track which is located adjacent to Grede's property." (Doc. 62-6, at 1.) E-mail discussing track inspections and/or conditions fall under Defendant's Request No. 5, seeking all documents "relating to the condition of the track or track bed." (*Id.*, at 2.) To the extent Plaintiff has any such non-privileged documents within the previously stated temporal and geographic limitations, the same are to be produced. If Plaintiff has produced all such documents, or no additional documents exist, the same are appropriate

supplemental responses.  Defendant's Motion to Compel is **GRANTED** as it relates to e-mail regarding track defects, conditions, and repairs.  To the extent Defendant seeks e-mails regarding "track maintenance,' the same would be encompassed by Request No. 4, which the Court found objectionable.  As such, this portion of Defendant's Motion to Compel is **DENIED**.

      **7.**      **Event data recorder from derailed train**.

      Defendant argues that the derailed train's "black box" would have recorded "relevant information" in the time leading up to the derailment.  (Doc. 60, at 9.) Plaintiff responds that "this document or information has never been requested in writing" and is in no way "responsive to the discovery requests Grede has propounded upon Union Pacific."  (Doc. 66, at 18.)  Plaintiff states that the event recorder monitors and records "various locomotive functions, including speed, direction, throttle, braking, time and distance.  It does not record conversatoins between the train's crew."  (Doc. 66 at 6.)  From Plaintiff's representations, it does not appear that the event data recorder compiled information "relating to the condition of the track or track bed" prior to and/or at the time of derailment, therefore the information would be responsive to Defendant's Request No. 5. (Doc. 62-6, at 2.)

      Defendant's Motion to Compel is **DENIED** as it relates to the event data

recorder.[6]

###    8.    **Work orders and trouble tickets**.

Defendant contends that one of Plaintiff's employees testified that Union

Pacific signalmen "respond to 'trouble tickets' or 'work orders,' some of which

may relate to alleged water discharges by Grede or just standing water due to

rainfall or some other unknown source."  (Doc. 73, at 11.)  Plaintiff responds that

"[t]hese documents do not relate directly to the condition of the track, but are

generated by Union Pacific's signal department in connection with reports of grade

crossing warning system problems and malfunctions."  (Doc. 66, at 18.)  Plaintiff

continues that "it would be unjust to find UP has failed to produce a document that

Grede never requested with the same specificity with which the document was

identified in Grede's Motion to Compel."  (*Id*.)  Again, the Court finds Plaintiff's

argument disingenuous.

As stated previously, a requesting party seeking institutional documents

from another company in an entirely different industry would have no way of

knowing how all relevant documents are categorized or named.  The Court

---

[6] Obviously, the event recorder contains relevant information concerning the events
that occurred on the day of the derailment.  Therefore, if an issue develops as to whether the
train was going too fast etc., the information from the recorder would be discoverable.  That
is not, however, the subject of the present discovery requests.

surmises that Defendant did not know how to refer to these documents with Plaintiff's desired level of "specificity" until the documents were discussed during depositions of Plaintiff's employees.  Regardless, to the extent Plaintiff has work orders and/or trouble tickets that resulted in repairs to the section of track at issue and/or referred to the condition of the relevant track or track bed, the same fall under Defendants Requests Nos. 2 and 5 and are discoverable.  To the extent these documents relate only to grade crossing warning system problems and malfunctions rather than the actual track or track bed, the same are not responsive unless such problems and/or malfunctions were caused by water or drainage issues in the area in question.  Defendant's Motion to Compel is **GRANTED in part** and **DENIED in part** as it relates to work orders and trouble tickets.

E.      **Failure to Sign Discovery.**

Fed.R.Civ.P. 33(b)(5) states that the person who answers interrogatories "must" sign them.  In its responsive brief, Plaintiff stated it would be "doing so shortly."  (Doc. 66, at 24.)  As of the filing of Defendant's reply brief, however, Plaintiff had yet to produce signed discovery responses, some four and a half months after Plaintiff first served its Interrogatory responses.  (Doc. 73, at 12.) The court is unaware whether signed discovery has subsequently been provided. Plaintiff's explanation is thoroughly lackadaisical, stating only that Defendant has

not been prejudiced by Plaintiff's failure "since the person signing on behalf of a corporation . . . does not necessarily need to have personal knowledge of all facts set forth therein and is allowed to reply on counsel's coordination and/or preparation of responses."  (Doc. 66, at 24-25.)  This is clearly unacceptable and flies in the face of the Federal Rules of Civil Procedure.  The Court can see no legitimate reason for the delay, nor has Plaintiff even attempted to provide one.  If they have not been previously provided, Plaintiff shall serve fully executed interrogatory responses within fifteen (15) days of the date of this Memorandum and Order or be subject to potential sanctions by the Court.  Defendant's Motion to Compel signed discovery responses is **GRANTED**.

**F.**     **Supplemental Interrogatory Responses**.

Defendant argues that even though it provided a 30 day extension to Plaintiff, Plaintiff "provided deficient and incomplete responses to Grede's interrogatories and document requests."  (Doc. 60, at 11.)  Defendant seeks supplementation of several of Plaintiff's interrogatory responses, which will be addressed in turn.

**1.**     **Interrogatory No. 2**.

Interrogatory No. 2 seeks the identity of all persons with knowledge of "discharge" mentioned in response to Defendant's Interrogatory No. 1 as well as

the identity of any documents "relating to the discharge."  Plaintiff has claimed the

work product privilege as a basis to withhold the only responsive information it

apparently has.  Defense counsel sent correspondence to Plaintiff's counsel on

March 11, 2008, demanding an appropriate privilege log (Doc. 60, at 11-12; Doc.

62-13.)  Plaintiff admits it has not provided a "formal 'privilege log,'" but is

"happy to do so."  (Doc. 66, at 19-20.)  The Court therefore **GRANTS** this portion

of Defendant's Motion to Compel and orders Plaintiff to provide the appropriate

privilege log.  The log shall be served on Defendant within ten (15) days of the

date of this Memorandum and Order.

      **2.**      **Interrogatories Nos. 3, 4**.

This Interrogatory seeks "all facts," including the identification of witnesses

and documents, supporting the contention in Plaintiff's state court Petition "that

the derailment was caused by the discharge of water from Grede's Wichita foundry

onto or near Union Pacific railroad tracks."  (Doc. 62-2, at 3.)  Plaintiff answered

by referring to an "anonymous person" who allegedly spoke with one of Plaintiff's

employees, indicated its investigation was "ongoing," and agreed to supplement its

answers as information "becomes known."  (*Id*.)  Interrogatory No. 4 seeks certain

information relating to the contention in Plaintiff's state court Petition "that the

discharge of water affected the stability of the tracks and ground there under."  In

response to Interrogatory No. 4, Plaintiff incorporated its response to Interrogatory No. 3.[7]

Plaintiff contends that "the identity of all responsive witnesses have been identified as the names of these individuals were learned during the course of discovery, and primarily in depositions." (Doc. 66, at 20.) Fed.R.Civ.P. 26(e)(1)(A) states that supplementation of discovery responses "must" occur if the responding party becomes aware of additional information that "has not otherwise been made known to the other parties during the discovery process or in writing." Plaintiff interprets this language to mean it has no duty to supplement its response to Interrogatory No. 3 because any additional information was made known to Defendant through witness deposition testimony. The Court does not agree.

Plaintiff specifically stated in its response to Interrogatory No. 3 that it would supplement its response "as additional information becomes known." Pursuant to Fed.R.Civ.P. 26(e)(1)(B), Plaintiff is hereby Ordered to provide a supplemental response to this discovery request. Defendant's Motion is **GRANTED** to the extent it relates to Interrogatories Nos. 3 and 4.[8]

---

[7] Plaintiff's initial responses to Interrogatory No. 4 contains a typo, instructing Defendant to "[s]ee answer to Interrogatory No. 4," rather than Interrogatory No. 3. Plaintiff explained this should have referred to Interrogatory No. 3. (Doc. 66, at 21.)

[8] Plaintiff also argues in its responsive brief that Interrogatories Nos. 3 and 4 are improper "contention" interrogatories. Plaintiff did not make this objection in its response

### 3.    Interrogatories Nos. 10, 11, and 12.

Defendants Interrogatories Nos. 10, 11, and 12 seek information from July 1, 1996, to the present regarding a) incidents when the tracks along the west side of Grede's facility were washed out or damaged due to heavy rains or flooding, b) defects discovered in these tracks, and c) repairs or reconstructions made to these tracks.  (Doc. 62-2, at 6-9.)  Plaintiff objects to the temporal scope of these requests.  As the Court has previously noted, however, Defendant has sufficiently supported the basis for the time frame at issue.  (*See* Section B, *supra*.)

Plaintiff also contends that responding to the interrogatories "would be extraordinarily burdensome and time consuming."  (Doc. 62-2, at 7, 8.)  Plaintiff did not, however, provide any substantive discussion as to how this is so.  "The objecting party must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  ***Allianz Ins. Co. v. Surface Specialties, Inc.***, No. 03-2470-CM-DJW, 2005 WL 44534, at *2 (D.Kan. Jan. 7, 2005) (internal citation

---

to the discovery requests.  (Doc. 62-2, at 3-4.)  As such, this argument is waived and will not be considered by the Court.  *See **Moses v. Halstead***, 236 F.R.D. 667, 673 (D.Kan. 2006) (holding that because a responding party did not assert an objection when it initially responded to an interrogatory, the objection was waived).

omitted).  Plaintiff's objections to Interrogatories Nos. 10, 11, and 12 are, therefore, **OVERRULED**.  The Court **GRANTS** Defendant's Motion to Compel to the extent it relates to Interrogatories 10, 11, and 12 and Plaintiff is ordered to provide appropriate and thorough responses without objection.[9]

### 4.     Interrogatories Nos. 13 to 16.

Interrogatories Nos. 13-16 relate to costs and/or damages incurred by Plaintiff.  (Doc. 62-2, 9-12.)  In response, Plaintiff produced documents pursuant to Fed.R.Civ.P. 33(d).  Each of the interrogatories, however, asks Plaintiff to identify witnesses with knowledge of the facts relating to such damages and/or costs. Plaintiff is correct that Fed.R.Civ.P. 26(e)(1)(A) states it need not supplement its responses if the information at issue has  "otherwise been made known to the other parties during the discovery process or in writing."  Plaintiff contends that the identities of all individuals with knowledge of the damages and/or costs incurred by it are contained in the "recollectible file" it produced in response to these interrogatories.  If so, Plaintiff need not identify these individuals by supplemental written response.[10]  Defendant's Motion to Compel is **DENIED** as it relates to

_____

[9] The Court notes that Plaintiff specifically agreed to supplement its answers to Interrogatories 10 and 11.  (*See* Doc. 62-2, at 7-8.)

[10]  To the extent that Plaintiff intends to offer witnesses at trial regarding any such costs or damages, these individuals must be identified in the documents previously produced or a supplemental response will be necessary.

Interrogatories 13, 14, 15, and 16.

**G.    Sanctions**.

Defendant contends that Union Pacific "should be required to pay Grede's fees for the substantial amount of time required to seek compliance with its discovery requests, and prepare this motion, as provided by Federal Rule of Civil Procedure 37(a)(5)(A)."  (Doc. 60, at 15.)  Plaintiff argues that "there is no basis for an imposition of sanctions" because it did not "assert frivolous objections to the subject discovery and . . . it should not be penalized for standing on those objections . . ."  Although the Court did not agree with many of Plaintiff's objections, it does agree that the objections were not frivolous.  As such, the Court sees no basis for the imposition of sanctions at the present time.

Plaintiff's failure to provide signed discovery responses, however, is both frivolous and unexplained.  Should Plaintiff fail to provide signed interrogatory responses by the required time, the Court will revisit the issue of sanctions upon Defendant's request.

After reviewing the sixty-three pages of briefing related to this motion, not counting the numerous exhibits, the court believes that many of the issues raised in this motion could have been, and in fact should have been, resolved through a meet and confer process.  In the future, if similar disputes arise, the court will require

counsel for the parties to meet and confer <u>in person</u> rather than through correspondence, email or telephone exchanges, before filing additional discovery motions.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (Doc. 59) is **GRANTED in part and DENIED in part** as more fully set forth in this Memorandum and Order.  Not later than fifteen (15) days after the entry of this Memorandum and Order, Plaintiff shall serve, without objection (unless an objection was sustained in this Memorandum and Order), full, complete, and verified answers to Defendant's Interrogatories and produce all documents responsive to Plaintiff's Requests for Production here at issue.  Such production shall take place at the offices of counsel for Defendant at 1551 N. Waterfront Parkway, Suite 100, in Wichita, Kansas, or at any other location agreed upon by the parties.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas, on this 3rd day of September, 2008.

s/ DONALD W. BOSTWICK
DONALD W. BOSTWICK
United States Magistrate Judge